FILED
U.S. DISTRICT COURT
EASTERN DISTRICT ARKANSAS

OCT 26 2020

JAMES W. McCORMACK, CLERK
By: _____
                        DEP CLERK

UNITED STATES DISTRICT COURT
EASTERN DISTRICT
CENTRAL DIVISION

J & B TANKERS, INC. and
JAMES WESTLAKE                                              PLAINTIFFS

NO. 4:20CV1277-SWW

NAVISTAR INTERNATIONAL CORPORATION, and
NAVISTAR, INC.                                              DEFENDANTS

### COMPLAINT

This case assigned to District Judge Wright
and to Magistrate Judge Ray

### PARTIES

1. Plaintiff J&B Tankers, Inc. is an Independent Corporation based out of Plainview, Yell County, Arkansas.

2. Plaintiff James Westlake is the President/CEO of J&B Tankers, Inc., with a principle residence in Plainview, Yell County, Arkansas.

3. Defendant Navistar International Corporation is a parent company whose subsidiary Navistar, Inc. produces, among other things, heavy-duty and midrange commercial trucks. Navistar International is a foreign for-profit corporation incorporated in Delaware with a foreign address in Lisle, Illinois.

4. Defendant Navistar, Inc. is a wholly-owned subsidiary of Navistar International Corporation. Navistar, Inc. manufactures International brand heavy-duty and midrange

1

commercial trucks and MaxxForce brand diesel engines. Navistar, Inc. is a foreign for-profit corporation registered with the Arkansas Secretary of State, originating in Delaware, with a foreign address in Lisle, Illinois.

5. This is an action sounding in negligence, strict liability, breach of implied and express warranties, and misrepresentation of fact, arising out of defective equipment which was sold to Plaintiffs for use in their business.

## JURISDICTION AND VENUE

6. Jurisdiction in this matter is properly before the Court pursuant to 28 U.S. Code § 1332, pursuant to diversity jurisdiction. The amount at issue exceeds $75,000.00.

7. Venue is proper pursuant to 28 U.S. Code §1391. The events giving rise to the Plaintiff's claims occurred within this judicial district. Plaintiff and his Company are located within this judicial district.

## FACTS

8. On or about May 26, 2015, J&B Tankers, Inc., by and through its Owner James Westlake, purchased three (3) International Trucks, model 7400, year 2016, with Navistar N9 MaxxForce Engines.

9. At the time, Navistar promoted its N9 Engines as having been built on the same platform as its DT engine. The promotional material states: "A rock-solid, time-tested platform ensures legendary reliability."

10. Unfortunately, the N9 Engines suffer from the same or similar design flaws as the predecessor engines, the MaxxForce 11, 13, or 15 liter engines that were the subject of a class action captioned In re Navistar MaxxForce Engines Marketing, Sales Practices and Products Liability Litigation, Case No. 1:14-cv-10318.

11. The Navistar N9 Maxxforce Engines purchased by J & B Tankers failed at an alarmingly early rate, forcing J&B Tankers, Inc. and/or Mr. Westlake to take the trucks out of service for repairs. Two of the engines were overhauled or replaced at approximately 28,000 and 40,000 miles. The third engine developed the same problems at approximately 55,000 miles. For approximately three years, J&B Tankers, Inc. was plagued with problems related to the International Trucks purchased with the N9 Maxxforce Engines. J&B Tankers, Inc. was forced to hire out other drivers, or other trucks in order to meet their business demands, spending at least $85,000.00 out-of-pocket in consequential damages.

12. Mr. Westlake tried to sell the trucks in question, but was not able to given their reputation for engine failure.

13. On or about June of 2018, Mr. Westlake turned the trucks back into the financing company rather than continue with the business interruption and unreliability caused by the faulty engines. At the time, Mr. Westlake owed more than $36,000 on the trucks, over their fair market value.

14. In September of 2018, Navistar Inc. issued a recall on the 2016, N9 engines as a result of a defect in the emissions system.

15. Similar to the defect found in the larger engines, the problem with the emissions system in the N9 engines sold to J&B Tankers, Inc. resulted in engine failure, broken components, safety issues such as sudden engine failures, and other issues that prevented the International Trucks from functioning as warranted and represented and as reasonable purchasers would anticipate.

16. Given the problems with the predecessor engines, Navistar knew or should have known that the N9 engines would suffer from the same or similar issues with design and rather than provide warning to the purchasers of the engines, Navistar promoted the engines as having a high reliability rate.

17. Attorneys for Navistar entered into a series of tolling agreements with the Plaintiffs in this matter, extending any applicable statutes of limitations to October 26, 2020.

## CLAIMS

### I.     NEGLIGENCE

18. Plaintiff realleges paragraphs 1-17 as set forth word for word herein.

19. At all times relevant to this cause of action, Defendants were engaged in the busines of designing, manufacturing, assembling, selling, marketing and/or otherwise distributing engines, including the engines in the trucks purchased by the Plaintiffs.

20. Defendants had a duty to properly design, manufacture, assemble, test, inspect, sell, market and/or otherwise distribute their products.

21. Defendants breached the duty to properly design, manufacture, assemble, test, inspect, sell, market and/or otherwise distribute their products by designing, manufacturing, assembling, selling, marketing and/or distributing and placing into the stream of commerce a product that was defective, dangerous and unsafe when used for its intended purpose.

22. As a direct result of Defendants' failure to properly design, manufacture, assemble, test, inspect, sell, market and/or otherwise distribute their products, the trucks purchased by the Defendants suffered repeated breakdowns and required engine overhauls at very low mileage, among other things.

23. The negligence of Defendants, specifically the failure to properly design, manufacture, assemble, test, inspect, sell, market and/or otherwise distribute their products, was the proximate cause of the problems with the Defendant's engines.

24. Plaintiffs pray that this Honorable Court award it damages against Defendants, in an amount to be proven at trial, the cost of this action, all reasonable attorneys' fees, prejudgment interest, post-judgment interest, and for all other just and proper relief.

## II.  STRICT LIABILITY

25. Plaintiff realleges paragraphs 1-17 as set forth word for word herein.

26. At all times relevant to this cause of action, Defendants were engaged in the busines of designing, manufacturing, assembling, selling, marketing and/or otherwise distributing engines, including the engines in the trucks purchased by the Plaintiffs.

27. Defendants had a duty to properly design, manufacture, assemble, test, inspect, sell, market and/or otherwise distribute its products.

28. Defendants' product, namely the N9 engine, was unreasonably dangerous and defective at the time it was designed, manufactured, assembled, tested, inspected, sold, marketed and/or otherwise distributed, and the defects in the product existed at the time the product left the control of the Defendants and at the time they entered the Plaintiffs' possession and control.

29. The N9 engine was supplied to Plaintiffs in a defective condition rendering it unreasonably dangerous, and the Defendants failed to appropriately and adequately warn users of the trucks that, under normal usage, it would cause damage and injury.

30. The defective condition of the N9 engine was the proximate cause of the loss sustained by the Plaintiffs.

31. Plaintiffs ask this Honorable Court to award it damages against the Defendants in an amount to be proven at trial, for the cost of this action, all reasonable attorney's fees, pre-judgment interest and for all other just and proper relief.

### III.   BREACH OF IMPLIED WARRANTIES OF MERCHANTABILITY AND FITNESS FOR A PARTICULAR PURPOSE

32. Plaintiff realleges paragraphs 1-17 as set forth word for word herein.

33. As designer, manufacturer, assembler, seller, marketer, and/or distributor of the N9 engine, Defendants warranted its products were safe and fit for their intended purpose and when used in an ordinary manner under ordinary conditions, therefore making them merchantable quality.

34. Defendants knew or should have reasonably expected Plaintiffs would use, consume, and/or be affected by their products and that Plaintiffs would rely on Defendants' skill or judgment to design, manufacture, assemble, sell, market and/or otherwise distribute their suitable products.

35. Defendants breached the implied warranties of merchantability and fitness for a particular purpose by designing, manufacturing, assembling, selling, marketing and/or otherwise distributing products that were unsafe and not fit for their intended purpose.

36. Defendants' breach of the implied warranties of merchantability and fitness for a particular purpose, was the proximate cause of the failures of the engines in the trucks purchased by the Plaintiffs.

37. Plaintiffs ask this Honorable Court to award it damages against the Defendants in an amount to be proven at trial, for the cost of this action, all reasonable attorney's fees, pre-judgment interest and for all other just and proper relief.

## IV. BREACH OF EXPRESS WARRANTY AND MISREPRESENTATION OF FACT

38. Plaintiff realleges paragraphs 1-17 as set forth word for word herein.

39. As designer, manufacturer, assembler, seller, marketer, and/or distributor of the N9 engine, Defendants warranted its products were safe and fit for their intended purpose and when used in an ordinary manner under ordinary conditions, therefore making them merchantable quality.

40. Defendants knew or should have reasonably expected Plaintiffs would use, consume, and/or be affected by their products and that Plaintiffs would rely on Defendants' warranty and representation that the N9 engine was safe, fit and suitable for its intended purpose when used in an ordinary manner.

41. Defendants breached the warranty and representation by designing, manufacturing, assembling, selling, marketing and/or otherwise distributing products that were unsafe and not fit for their intended purpose.

42. Defendants' breach of the warranty and representation by designing, manufacturing, assembling, selling, marketing and/or otherwise distributing products that were unsafe and not fit for their intended purpose was the proximate cause of the catastrophic engine loss which damaged Plaintiff's aircraft.

43. Plaintiffs ask this Honorable Court to award it damages against the Defendants in an amount to be proven at trial, for the cost of this action, all reasonable attorney's fees, pre-judgment interest and for all other just and proper relief.

## V. DAMAGES

44. Plaintiffs sustained damages as a direct result of the liability of the Defendants.

45. Plaintiffs' damages exceed $121,000 as a result of the loss of value of the trucks when they were turned back into the company, as well as the loss of use damages and/or reasonable costs incurred while the trucks were being repaired.

46. Plaintiff has sustained total damages of over $121,000 as a result of Defendants' negligence and breach of warranties.

47. Plaintiff demands a trial by jury.

WHEREFORE, Plaintiffs, J&B Tankers, Inc. and James Westlake pray for judgment against the Defendants, Navistar International Corporation and/or Navistar, Inc., in an amount to be determined at trial, for its costs herein expended, for prejudgment interest and post-judgment interest, attorneys' fees and for all other just and proper relief.

*Attorneys for Plaintiffs*

DODDS, KIDD, RYAN & ROWAN
Catherine A. Ryan (2016020)
313 West Second Street
Little Rock, AR 72201
Telephone: (501) 375-9901
Facsimile: (501) 376-0387
E-Mail: cryan@dkrfirm.com

By: _____