### IN THE UNITED STATES DISTRICT COURT
### EASTERN DISTRICT OF ARKANSAS
### CENTRAL DIVISION

J&B TANKERS, INC. and JAMES    *
WESTLAKE    *
             PLAINTIFFS   *
   *
V.    *     CASE NO.  4:20CV01277 SWW
   *
   *
NAVISTAR INTERNATIONAL    *
CORPORATION    *
          DEFENDANT   *

## ORDER

This is a product liability action by J&B Tankers, Inc. ("J&B"), a trucking company, and James Westlake ("Westlake"), the owner of J&B, against Navistar, Inc., a truck manufacturer.  Before the Court is Navistar's motion to dismiss (ECF No. 32), pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, and Plaintiffs' response in opposition (ECF No. 35).  After careful consideration, and for reasons that follow, the motion is granted in part and denied in part.

## I.

In this diversity case, Arkansas law governs the substantive claims and defenses, but procedural matters are governed by the Federal Rules of Civil Procedure.  *Ashley Cty., Ark. v. Pfizer, Inc.*, 552 F.3d 659, 665 (8th Cir. 2009) (citations omitted).  In deciding a motion to dismiss under Rule 12(b)(6), the Court

1

must take as true the alleged facts and determine whether they are enough to raise more than a speculative right to relief.  *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 555–56 (2007).  The Court does not, however, accept as true any allegation that is a legal conclusion.  *Ashcroft v. Iqbal,* 556 U .S. 662, 678 (2009).  The complaint must set forth "enough facts to state a claim to relief that is plausible on its face." *Twombly,* 550 U.S. at 570.  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal,* 556 U.S. at 678.

## II.

The following facts are taken from the complaint.  In May 2015, J&B purchased three 2016 Navistar trucks, each equipped with a Navistar N9 MaxxForce engine ("N9" engine).  Plaintiffs soon encountered problems with the N9 engines:  Two were overhauled or replaced at 28,000 and 40,000 miles and another at 55,000 miles, and Plaintiffs were forced to hire replacement drivers and trucks at a cost of $85,000.  Westlake attempted to sell the trucks but had no buyers, and in June 2018, with more than the fair market value of the trucks due, he turned them over to the financing company.[1]  In September 2018, Navistar

---

[1] In their response in opposition to Navistar's motion, Plaintiffs state that they turned the trucks in to "Navistar's finance company."  ECF No. 33, at 12.

recalled N9 engines due to a defect in the emissions system that caused engine failure, broken components, and safety issues that included sudden engine failure.

When J&B purchased the trucks, Navistar's promotional material touted the vehicles as "rock-solid" with a "time tested platform" and "legendary reliability."[2] Additionally, Navistar promoted the N9 engine as having the same platform as the company's "DT" engine.  Plaintiffs claim that contrary to Navistar's promotions, "the N9 engines suffer from the same or similar design flaws as . . . predecessor engines . . . that were the subject of a class action captioned *In re Navistar MaxxForce Engines Marketing. Sales Practices and Products Liability Litigation*, Case No. 1: 14-cv-10318."  The amended complaint is void of specific information about Navistar's "DT engine" or the referenced class action.

## III.

Plaintiffs seek relief under theories of strict liability, negligence, breach of implied and express warranties, misrepresentation of fact, deceptive trade practices, and revocation of acceptance, and Navistar moves to dismiss each claim for failure to state a claim upon which relief can be granted.  The Court will address each claim separately.

---

[2] ECF No. 1, ¶ 9.

3

**Strict Liability**

Under Arkansas product liability law, a supplier of a product is strictly liable for damages if (1) the supplier is engaged in the business of manufacturing, assembling, selling, leasing, or otherwise distributing the product, (2) the supplier supplied the product in a defective condition that rendered it unreasonably dangerous, and (3) the product's defective condition was a proximate cause of the harm to a person or to property.  Ark. Code Ann. § 16-116-101(a).

Navistar contends that Plaintiffs merely recite the word "dangerous" and allege no facts suggesting the existence of an unreasonably dangerous defect, only inadequate performance.[3]  Navistar correctly notes that a product is not "unreasonably dangerous" merely because it is inadequate, dysfunctional, or fails to perform as promised.  *See Apex Oil,* 881 F.3d at 661  (noting that "Arkansas law recognizes that a consumer with ordinary knowledge would contemplate that a product may be less effective than the supplier represents").  Instead, the defect must pose an actual danger to person or property, which exceeds "that contemplated by the ordinary and reasonable buyer, taking into account any special

---

[3]  Navistar also points out that Plaintiff's alleged damages are economic, but in Arkansas, "strict liability applies in a situation where the loss or damage alleged is purely economic and relates only to the defective product."  *Farm Bureau Ins. Co. v. Case Corp.*, 317 Ark. 467, 471, 878 S.W.2d 741, 743 (1994) (citing *Berkeley Pump Co. v. Reed–Joseph Land Co.,* 279 Ark. 384, 653 S.W.2d 128 (1983) and *Blagg v. Fred Hunt Co., Inc.,* 272 Ark. 185, 612 S.W.2d 321 (1981)).

4

knowledge of the buyer concerning the characteristics, propensities, risks, dangers, and proper and improper uses of the product." *Purina Mills, Inc. v. Askins*, 317 Ark. 58, 66, 875 S.W.2d 843, 847 (1994) (citing Restatement (Second) of Torts § 402A).

Here, Plaintiffs claim that the N9 engine, manufactured and supplied by Navistar, suffered from an emissions system design flaw that, among other things, "would cause the engines to fail at unpredictable times, including while the trucks were fully loaded and traveling on the highway."[4]  The Court finds that these allegations provide at least plausible grounds to infer that the N9 engine is unreasonably dangerous, and taken as true, Plaintiffs' factual allegations are enough to state a claim for strict liability.

**Negligence**

Plaintiffs allege:  As a direct result of [Navistar's] failure to properly design, manufacture, assemble, test, inspect, sell, market and/or otherwise distribute their products, the trucks purchased . . . suffered repeated breakdowns and required engine overhauls at very low mileage, among other things."[5]  Plaintiffs add that Navistar's negligence "was the proximate cause of the problems with the engines in Plaintiff[s'] trucks."[6]

---

[4] ECF No. 31, ¶ 29.
[5] ECF No. 31, at 23.
[6] ECF No. 31, ¶ 24.

Navistar argues that Plaintiffs' negligence claim is nothing more than a breach of contract claim impermissibly disguised as a tort claim. The Court disagrees. Allegations of contractual nonfeasance, without more, fail to state a claim for negligence under Arkansas law. *See GeoVera Specialty Ins. Co. v. Graham Rogers, Inc.*, 636 F.3d 445, 451 (8th Cir. 2011). Here, however, Plaintiffs plead the essential elements for a negligence claim, alleging that Navistar breached a duty to use reasonable care in the design and manufacture of the N9 engine, which caused Plaintiffs to suffer foreseeable harm. *Apex Oil Co., Inc. v. Jones Stephens Corp.*, 881 F.3d 658, 662 (8th Cir. 2018) (citing *Wallace v. Broyles*, 331 Ark. 58, 961 S.W.2d 712, 715 (1998) and *Benson v. Shuler Drilling Co.*, 316 Ark. 101, 871 S.W.2d 552, 558 (Ark.1994)) ("Negligence means the failure to do something that a reasonably careful person would do to guard against a foreseeable danger.").

### Breach of Implied and Express Warranties

Plaintiffs charge that Navistar breached an express warranty and implied warranties of merchantability and fitness for a particular purpose. Navistar seeks dismissal of each breach-of-warranty claim as time-barred[7] and argues that

---

[7]A limitations defense may be properly asserted through a Rule 12(b)(6) motion "when it 'appears from the face of the complaint itself that the limitation period has run[.]'" *Varner v. Peterson Farms*, 371 F.3d 1011, 1016 (8th Cir. 2004) (quoting *Wycoff v. Menke,* 773 F.2d 983, 984–985 (8th Cir.1985)). Under Arkansas law, "if it is clear from the face of the complaint that the action is barred

Plaintiffs' express warranty claim "is based upon classic puffery, which is not actionable."[8]

"An action for breach of contract for sale must be commenced within four (4) years after the cause of action has accrued[,]" Ark. Code Ann. § 4-2-725(1), and a cause of action "accrues when the breach occurs, regardless of the aggrieved party's lack of knowledge of the breach." Ark. Code Ann. § 4-2-725(2).  "A breach of warranty occurs when tender of delivery is made, except that where a warranty *explicitly extends* to future performance of the goods and discovery of the breach must await the time of such performance the cause of action accrues when the breach is or should have been discovered." *Id.* (emphasis added).

Plaintiffs plead that they purchased the Navistar trucks on or about May 26, 2015, and other allegations indicate that delivery occurred either on that date or at least before the end of May 2015.[9]  Plaintiffs filed this action on October 26, 2020, more than one year past the four-year statute of limitations period.  They argue, however, that Navistar's endorsement that the N9 engine was built on a "rock-

---

by the applicable limitations period, the burden shifts to the plaintiff to prove by a preponderance of the evidence that the statute of limitations was in fact tolled." *Id.* (citing *First Pyramid Life Ins. Co. of America v. Stoltz,* 311 Ark. 313, 843 S.W.2d 842, 844 (1992)).

[8] ECF No. 32, at 2.

[9] Plaintiffs allege:  "Between May of 2015 and June of 2018, J&B

solid, time-tested platform" that "ensure[d] legendary reliability" amounted to a warranty relating to future performance such that the cause of action accrued after delivery.  To the contrary, although Navistar's advertisement *implied* that trucks equipped with the N9 engine would perform well in the future, it did not amount to an *explicit* warranty of future performance as required to extend the statute of limitations.  *Marvin Lumber & Cedar Co. v. PPG Indus., Inc.*, 223 F.3d 873, 880 (8th Cir. 2000) (noting that a representation that "does not refer to the future at all" and amounts to puffery do not constitute warranties extending to future performance).

Plaintiffs also allege that the parties entered into a series of tolling agreements that extended the applicable statute of limitations through October 26, 2020.  Navistar provides uncontested copies of letters referenced in the amended complaint that memorialize two such agreements between the parties.[10]  The first letter, dated May 20, 2020, provides that the parties agreed to a two-month tolling of "any applicable statute of limitations regarding the claims at issue involving the purchase, on or about May 26, 2015, of three vehicles equipped with . . . N9

---

[10]"'When deciding a motion to dismiss, a court may consider the complaint and documents whose contents are alleged in a complaint and whose authenticity no party questions, but which are not physically attached to the pleading.'" *Kushner v. Beverly Enterprises, Inc.*, 317 F.3d 820, 831–32 (8th Cir. 2003) (quoting *In re Syntex Corp. Sec. Litig.,* 95 F.3d 922, 926 (9th Cir. 1996)).

engines . . . ."[11]  The letter specifies that Navistar would not raise a statute of limitations defense "so long as the claim is filed on or before July 26, 2020."[12]

The second letter, dated July 20, 2020, states that the parties agreed to "a thirty-day additional tolling of any applicable statute of limitations *which have not already run* as of the date of the previous tolling agreement dated May 20, 2020 . . . ."[13]  Based on the plain language of the letters, the first agreement expired on July 26, 2020,  and the second agreement extended the tolling agreement thirty days, up to August 25, 2020, for claims with a limitation period that had not run as of May 20, 2020.  Even if the limitation period for Plaintiffs' warranty claims had not expired by May 20, 2020, which appears to be the case, Plaintiffs filed suit on October 26, 2020, past the agreed August 25, 2020 deadline.

Plaintiffs also suggest that equitable estoppel applies in this case and prevents dismissal at this juncture. The Court disagrees.  Equitable estoppel "'precludes a party from asserting the statute of limitations when his actions have fraudulently or inequitably invited a party to delay commencing legal action until the relevant statute of limitations has expired, or when he has done anything that would lull the other party into inaction so that his vigilance is relaxed.'" *B & B Hardware, Inc. v. Fastenal Co.*, 688 F.3d 917, 921 (8th Cir. 2012) (quoting *Taylor*

---

[11] ECF No. 32-, at 7.

[12] *Id*.

[13] ECF 32-1, at 9 (emphasis added).

*v. Taylor,* 2009 Ark. App. 605, 343 S.W.3d 335, 339 (2009)).  The elements of estoppel are these:  "(1) the party to be estopped knew the facts; (2) the party to be estopped intended that the conduct be acted on; (3) the party asserting the estoppel was ignorant of the facts; and (4) the party asserting the estoppel relied on the other's conduct and was injured by that reliance."  *Id*.  Here, Plaintiffs allege that Navistar touted its product as reliable to the world at large, but they allege no facts indicating that Navistar took steps to prevent Plaintiffs from filing suit on time.

Finally, Plaintiffs note that the Supreme Court of Arkansas has held "that while the statute of limitations ordinarily begins to run against an action for breach of warranty upon the sale and delivery of a chattel which does not comply with the warranty, . . . the statute is tolled so long as the vendor insists that the defect can be repaired and is attempting to do so."  *Louisville Silo & Tank Co. v. Thweatt*, 174 Ark. 437, 295 S.W. 710, 712 (1927).  Plaintiffs allege that the subject N9 engines failed "at an alarmingly early rate, forcing [them] to take the trucks out of service for repairs."[14]  They do not allege that Navistar undertook or commissioned the repairs, nor do they allege specific facts indicating that Navistar forestalled initiation of this lawsuit until expiration of the limitation period by promising Plaintiffs that repair was possible.  The Court finds that it is clear from the face of the amended complaint that Plaintiffs' breach of warranty claims are time-barred.

---

[14] ECF No. 21, ¶ 11.

**Misrepresentation of Fact**

A claim for fraud, misrepresentation, or deceit requires proof of the following:  (1) a false representation of material fact; (2) knowledge that the representation is false or that there is insufficient evidence upon which to make the representation; (3) intent to induce action or inaction in reliance upon the representation; (4) justifiable reliance on the representation; and (5) damage suffered as a result of the reliance. *Wheeler Motor Co. v. Roth,* 315 Ark. 318, 867 S.W.2d 446 (1993).

Pursuant to Rule 9(b) of the Federal Rules of Civil Procedure, in pleading a claim sounding in fraud, a plaintiff must allege "'such matters as the time, place, and contents of false representations, as well as the identity of the person making the misrepresentation and what was obtained or given up thereby.'"  *Drobnak v. Andersen Corp.*, 561 F.3d 778, 783 (8th Cir. 2009) (quoting *Schaller Tel. Co. v. Golden Sky Sys., Inc.,* 298 F.3d 736, 746 (8th Cir.2002)).  "In other words, the complaint must plead the 'who, what, where, when, and how' of the alleged fraud."  *Id*. (quoting *United States ex rel. Joshi,* 441 F.3d at 556 (8th Cir. 2006)). Navistar argues, and the Court agrees, that Plaintiffs merely recite the elements of fraud and fail to specify the time, place, and precise circumstances regarding a false representation that Plaintiffs relied upon to their detriment.  Plaintiffs only allege that at the time of their purchase, Navistar's promotional material described

the N9 engine as "rock-solid" with a "time tested platform" and "legendary reliability."

Plaintiffs' pleading fails for an additional reason: They claim that Navistar falsely represented that the N9 engine was built on a "rock-solid" platform that ensured "legendary reliability," but these words, which merely endorse the quality of a product as superior and predict reliable performance, do not qualify as a representation of material fact.[15]  *Morrison v. Back Yard Burgers, Inc.*, 91 F.3d 1184, 1186 (8th Cir. 1996) (citing *Delta School of Commerce, Inc. v. Wood,* 298 Ark. 195, 199, 766 S.W.2d 424, 426 (1989).   ("In general, an expression of opinion, i.e., a statement concerning a matter not susceptible of accurate knowledge, cannot furnish the basis for a cause of action for deceit or fraud.")).

**Deceptive Trade Practices**

Plaintiffs bring a claim under the Arkansas Deceptive Trade Practices Act, alleging that Navistar claimed that the N9 engine was "time-tested" and "reliable," when it knew or should have known that the engine had a defect that rendered it

---

[15]Plaintiffs also claim that Navistar promoted the N9 engine as sharing the same platform as Navistar's "DT engine" but that the N9 suffered from the "same or similar design flaws" as engines that were the subject of a class action lawsuit. Plaintiffs provide no information regarding context or content of the "DT engine" or the class action lawsuit referenced in the amended complaint. Without more, Plaintiffs' allegations fail to state a claim.

unreliable and dangerous.  Plaintiffs allege that they relied on Navistar's representations and suffered financial damages as a result.

The Arkansas Deceptive Trade Practices Act ("ADTPA") provides a private cause of action for any person who suffers actual damage or injury as a result violation of the Act.  *See* Ark. Code Ann. §  4-88-113(f).  The ADTPA enumerates specifically prohibited trade practices, *see* Ark. Code Ann. 4-88-107(a)(1)-(9), including making false representations as to the characteristics, ingredients, uses, benefits, alterations, source, sponsorship, approval, or certification of goods.  Ark. Code Ann. § 4-88-107(a)(1).  The Act also includes a catch-all provision that prohibits "[e]ngaging in any other unconscionable, false, or deceptive act or practice in business, commerce, or trade."  Ark. Code Ann. 4-88-107(10).  The Supreme Court of Arkansas has held that the elements for a private cause of action under the ADTPA include "(1) a deceptive consumer-oriented act or practice which is misleading in a material respect, and (2) injury resulting from such act." *Skalla v. Canepari*, 2013 Ark. 415, 14, 430 S.W.3d 72, 82 (2013) (citing Ark. Code Ann. § 4–88–113(f)).

Navistar argues, and the Court agrees, that its statement that the N9 engine was  built on a "rock-solid" platform that ensured "legendary reliability" amounted

to puffery, not false representation actionable under the ADTPA.[16]  As explained in

connection with Plaintiffs' claim for misrepresentation, Navistar's broad statement

amounted to an expression of opinion, not a factual representation about the

characteristics or benefits of goods.  *See Epley v. John Gibson Auto Sales*, 2016

Ark. App. 540, 5, 514 S.W.3d 468, 471 (2016) (finding statement that vehicle was

---

[16] Navistar also argues that because Plaintiffs purchased the trucks for use in a commercial enterprise, they fail to allege a "consumer-oriented" act or practice for purposes of the ADTPA.  However, the ADTPA permits a private cause of action by "[a] person who suffers an actual financial loss as a result of his or her reliance on the use of a practice declared unlawful by [the ADTPA],"  Ark. Code Ann. § 4-88-113(f)(1)(A), and defines "person" as "an individual, organization, group, association, partnership, corporation, or any combination of them." Ark. Code Ann. § 4-88-102 (5).

Furthermore, the cases cited by Navistar do not support the proposition that the purchase of goods by a commercial consumer does not qualify as a "consumer-oriented act or practice" for purposes of the ADTPA.  *See Stonebridge Collection, Inc. v. Carmichael*, 791 F.3d 811 (8th Cir. 2015) (finding no consumer-oriented act under the ADTPA based on knife engraver's claim that a competitor, distributor, and former employee converted customer files); *Newell v. Bailey & Oliver P.A.*, No. 5:17-CV-5028, 2017 WL 2709753, at *6 (W.D. Ark. June 22, 2017) (finding no consumer-oriented act based on discrimination claim arising from employment practices); *Skalla v. Canepari*, 2013 Ark. 415, 14, 430 S.W.3d 72, 82 (2013) (finding no consumer-oriented act based on dispute over farming business); *Apprentice Info. Sys., Inc. v. DataScout, LLC*, 2018 Ark. 149, 544 S.W.3d 536, 539 (2018) (finding no consumer-oriented act where plaintiff sued competitor "over a thwarted business model" and tortious interference with business expectancy).  In fact, the Arkansas Supreme Court has permitted the application of the ADTPA in a nontraditional consumer setting.  *See Baptist Health v. Murphy,* 365 Ark. 115, 118. 226 S.W.3d 800 (2006) (holding that trial court did not err in finding that hospital credentialing policy constituted a violation of the ADTPA).

in "good condition" was subject to interpretation and thus not a representation of material fact necessary to support claims for fraud or violation of ADTPA).

**Revocation of Acceptance**

The Uniform Commercial Code provides for revocation of acceptance based on the non-conforming character of goods.  Section 4-2-608 of the Arkansas Code provides:

(1) The buyer may revoke his acceptance of a lot or commercial unit whose non-conformity substantially impairs its value to him if he has accepted it

    (a) on the reasonable assumption that its non-conformity would be cured and it has not been seasonably cured; or

    (b) without discovery of such non-conformity if his acceptance was reasonably induced either by the difficulty of discovery before acceptance or by the seller's assurances.

(2) Revocation of acceptance must occur within a reasonable time after the buyer discovers or should have discovered the ground for it and before any substantial change in condition of the goods which is not caused by their own defects. It is not effective until the buyer notifies the seller of it.

(3) A buyer who so revokes has the same rights and duties with regard to the goods involved as if he had rejected them.

Ark. Code Ann. § 4-2-608.

Under the heading "Rescission/Revocation," Plaintiffs allege that given the N9 engine's defective design, the trucks they purchased failed to conform to contract, and the non-conformity substantially impaired the value of the trucks to

them.[17]   They further allege that their acceptance of the trucks was reasonably

induced by the difficulty of discovering the defect before acceptance, and that once

it became clear that repairs would not cure the defect, they notified Navistar that

the trucks would be turned back in, thereby revoking acceptance of the goods.[18]

Plaintiffs add that "[t]here has been no substantial change in the condition of the

trucks not caused by their own defects."[19]

Navistar argues that Plaintiffs' use of the trucks for over three years

precludes a finding that Plaintiffs revoked acceptance within a reasonable time and

before any substantial change in the condition of the trucks, not caused by their

own defects.  "Whether goods are nonconforming and a revocation of acceptance

was given within a reasonable time are questions of fact."  *May v. J.T.L., Inc.*, 292

Ark. 274, 278, 729 S.W.2d 417, 419 (1987) (citations omitted).  With this in mind,

and accepting Plaintiffs' factual allegations as true, the Court finds that Plaintiffs

have pled facts sufficient to pursue a remedy for revocation of acceptance.

## IV.

For the reasons stated, Defendant's motion to dismiss is GRANTED IN

PART and DENIED IN PART.  Plaintiff's claims for breach of warranty,

misrepresentation, and violation of the Arkansas Deceptive Trade Practices Act are

---

[17] ECF No. 31, at 8.
[18] ECF No. 31, ¶ 53.
[19] ECF No. 31, ¶ 54.

DISMISSED.   Plaintiffs' claims for strict liability, negligence, and revocation of

acceptance remain.

IT IS SO ORDERED THIS 14TH  DAY OF MAY, 2021.

/s/Susan Webber Wright
UNITED STATES DISTRICT JUDGE