## IN THE UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF ARKANSAS
## CENTRAL DIVISION

| | | |
|---|---|---|
| **J&B TANKERS, INC. and JAMES** | * | |
| **WESTLAKE** | * | |
| **PLAINTIFFS** | * | |
| | * | |
| **V.** | * | **CASE NO.  4:20CV01277 SWW** |
| | * | |
| | * | |
| **NAVISTAR INTERNATIONAL** | * | |
| **CORPORATION** | * | |
| **DEFENDANT** | * | |

## <u>ORDER</u>

This is a product liability action by J&B Tankers, Inc. (J&B), a trucking company, and James Westlake ("Westlake"), the president and CEO of J&B. Plaintiffs claim that three trucks J&B purchased in 2015, manufactured by Defendant Navistar, Inc. ("Navistar"), had defective engines.  Before the Court is Navistar's motion for summary judgment (*Docs. 55, 56, 57*) seeking dismissal of Plaintiffs' remaining claims for negligence, strict liability, and revocation of acceptance.  Plaintiffs have filed a response in opposition (*Docs. 59, 60*), and Navistar has filed a reply. (*Doc. 63*).  Also pending is Plaintiff's motion for reconsideration (*Doc. 64*) and Navistar's response in opposition (*Doc. 65*).  After careful consideration, and for reasons that follow, summary judgment is entered in

1

Navistar's favor, Plaintiffs' motion for reconsideration is denied, and this case is dismissed with prejudice.

## I. Background

In May 2015, Mr. Westlake, on J&B's behalf, entered a loan and security agreement for the purchase of three, 2016 Navistar trucks equipped with Navistar N9 engines.[1]  Plaintiffs soon encountered problems with the N9 engines.  Two were overhauled or replaced at 28,000 and 40,000 miles and a third at 55,000 miles, and J&B was forced to hire replacement drivers while the trucks were in repair. Mr. Westlake tried unsuccessfully to sell the trucks, and in June 2018, he turned them over to the financing company.

Plaintiffs filed this action on October 26, 2020, seeking relief under theories of strict liability, negligence, breach of implied and express warranties, misrepresentation of fact, deceptive trade practices, and revocation of acceptance. Among other things, Plaintiffs charge that the N9 engines proved defective and failed "at an alarming early rate.[2]  They claim damages in excess of $121,000 based on "the loss of value of the trucks when they were turned back into the

---

[1] ECF No. 55-1 at 53-61. It is undisputed that Mr. Westlake fell behind on payments soon after purchasing the trucks, and the financing company threatened repossession before the alleged engine failures occurred.

[2] ECF No. 31, at 11.

company, as well as the loss of use damages and/or reasonable costs incurred while the trucks were being repaired." *Doc. 31 at 10*.

By previous order, the Court granted in part and denied in part Navistar's motion to dismiss (*Doc. 36*), and Navistar now seeks summary judgment on Plaintiffs' remaining claims for strict liability, negligence, and revocation of acceptance.

## II. Summary Judgment Standard

Summary judgment is appropriate when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).   As a prerequisite to summary judgment, a moving party must demonstrate "an absence of evidence to support the non-moving party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986).  Once the moving party has properly supported its motion for summary judgment, the non-moving party must "do more than simply show there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp*., 475 U.S. 574, 586 (1986)

The non-moving party may not rest on mere allegations or denials of his pleading but must come forward with 'specific facts showing a genuine issue for trial. *Id*. at 587.  "[A] genuine issue of material fact exists if: (1) there is a dispute of fact; (2) the disputed fact is material to the outcome of the case; and (3) the dispute

3

is genuine, that is, a reasonable jury could return a verdict for either party." *RSBI Aerospace, Inc. v. Affiliated FM Ins. Co.,* 49 F.3d 399, 401 (8th Cir. 1995).

### III.  Discussion

Navistar first asserts that Plaintiffs' negligence and strict liability claims are time-barred under Arkansas's three-year statute of limitations, codified at Ark. Code Ann. § 16-116-203, which applies to all product-liability actions. The "discovery rule" governs the start of the limitation period, which means that the clock starts ticking when "the plaintiff knew or, by the exercise of reasonable diligence, should have discovered the causal connection between the product and the injuries suffered." *Robinson v. Mine Safety Appliances Co.*, 795 F.3d 879, 881 (8th Cir. 2015) (quoting *Martin v. Arthur,* 339 Ark. 149, 3 S.W.3d 684, 690 (1999)). Accordingly, the limitation period for Plaintiffs' negligence and strict liability claims started when Mr. Westlake knew of or should have discovered the connection between the N9 engines and Plaintiffs' alleged damages. *IC Corp. v. Hoover Treated Wood Prod., Inc.*, 2011 Ark. App. 589, 4, 385 S.W.3d 880, 883 (2011). "[T]he full extent of the harm is not required; indeed, the manifestation of the nature of the harm ... may be slight." *Martin,* 3 S.W.3d at 690.

Plaintiffs report that Navistar's N9 engines exhibited "continued problems as a result of EGR coolers that . . . crack or rupture, among other things."  Doc. 55-1 at 78.  "[A]n EGR system . . . is supposed to reduce . . . nitrogen oxides . . . that

escape as the result of the running engine" and in the case of the N9 engine, when the EGR coolers cracked, coolant contacted pistons, causing damage to the engine, sometimes causing it to hydro-lock. *Id*.

In deposition, Mr. Westlake acknowledged that when he purchased the subject trucks, he knew about problems associated with another Navistar engine that "had . . . EGR problems and failing everywhere." *Doc. 55-1 at 17*. And because Mr. Westlake knew about Navistar's previous EGR problems, when he purchased the trucks, he asked the dealer whether the engines were reliable [and] what about the EGR and the DEF stuff going on . . . . " *Id. at 19*. Mr. Westlake testified that the dealer told him that the engine problems had been "straightened out." *Id*.

It is undisputed that on October 17, 2016, less than one year after Mr. Westlake purchased the trucks, the engine in one truck hydro-locked, and the truck was towed for repairs, which included an engine overhaul. *Doc. 55-1 at 94*. A second truck failed in December 2016, when the EGR cooler began leaking. Doc. 55-1 at 80. Finally, in April 2017, a third truck hydro-locked and required repair, and by Mr. Westbrook's own admission, that is when he knew the engines had serious problems, and he began talking to the dealer about getting rid of the trucks. *Doc. 55-1 at 31-32*.

Given Mr. Westlake's familiarity with the EGR problems associated with

other Navistar engines, he arguably made the connection between the N9 engines and the injuries suffered, which included loss-of-use damages, in October or December 2016.  But by his own admission, Mr. Westbrook most certainly made the connection by April 2017.  At the *latest*, the limitations period began running in April 2017, and Plaintiffs' negligence and strict liability claims filed October 26, 2020 are time-barred.

Mr. Westlake submits an affidavit, which contradicts his deposition testimony, claiming that it was not until December 2017, after the warranty period had expired, and he had to pay for repairs himself, that "it was clear that [the trucks] had problems with engines that could not be fixed."  *Doc. 59-3 at 1*. Neither Mr. Westlake's self-serving affidavit nor the warranty expiration date create an issue for trial. The undisputed facts and Mr. Westlake's deposition testimony make clear that the limitation period began running by April 30, 2017, at the latest.

Navistar next moves for dismissal of Plaintiffs' demand for revocation of acceptance on the ground that it is a remedy, not a stand-alone claim, that requires an existing, independent claim for breach of a contract or warranty. The Court agrees.  Revocation of acceptance, a remedy under Ark. Code § 4-2-608, is available when a buyer establishes a non-conformity that substantially impairs the value of the goods to him.  Ark Code Ann. § 4-2-608(1).  A "non-conformity"

includes a breach of warranty or any failure to perform according to obligations under a contract. *Ford Motor Credit Co. v. Harper*, 671 F.2d 1117, 1124 (8th Cir. 1982); see also Ark. Code Ann. § 4-2-106(2) ("Goods . . . are 'conforming' . . . when they are in accordance with the obligations under the contract."). The Court previously dismissed as time-barred Plaintiffs' claims for breach of warranties, Plaintiffs do not assert a breach of contract claim against Navistar, and the demand for revocation of acceptance does not survive.

Finally, Plaintiffs ask the Court to reconsider its ruling denying leave to amend the complaint to add a claim for misrepresentation related to a failed attempt to settle this case before it was filed. For reasons that the Court has explained in detail (*Doc. 58*), the proposed claim would not survive a motion to dismiss. Nevertheless, Plaintiffs argue that the Court should grant leave to amend so that they can clarify the damages sought and remove "MaxxForce" from the description of the N9 engine at issue. Neither amendment would change the outcome in this case, and the Court finds no basis for reconsideration.

## IV. Conclusion

For the reasons stated, IT IS THEREFORE ORDERED that Defendant's motion for summary judgment (*Doc. 55*) is GRANTED, and Plaintiffs' motion for reconsideration (Doc. 64) is DENIED.

IT IS FURTHER ORDERED that, pursuant to the Judgment entered together

with this order, this action is DISMISSED WITH PREJUDICE.

IT IS SO ORDERED THIS 2ND  DAY OF DECEMBER, 2021.


/s/ Susan Webber Wright
UNITED STATES DISTRICT JUDGE